## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE FACTOR VIII OR IX CONCENTRATE BLOOD PRODUCTS LIABILITY LITIGATION | ) MDL 986 <br> ) 93 C 7452 <br> ) <br> ) This document relates to: <br> ) <u>Chang, et al. v. Bayer Corp., et al.</u>, <br> ) 04 C 4869 <br> ) <u>Peng, et al. v. Bayer Corp., et al.</u>, <br> ) 04 C 4868 <br> ) <u>Ho, et al. v. Bayer Corp., et al.</u>, <br> ) 06 C 7012 <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**
*(Ruling on Defendants' Motion for Summary Judgment
on Taiwan Plaintiffs' Tort Claims on Limitations Grounds)*

**INTRODUCTION**

On January 14, 2009, this court filed a memorandum opinion and order denying the defendants' motion to dismiss the claims of the plaintiffs from Taiwan on grounds of *forum non conveniens*. <u>In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.</u>, 595 F. Supp. 2d 855 (N.D. Ill. 2009). The reason for the denial was that the threshold issue of whether the claims are barred by limitations can more economically be resolved by the district courts in California than by requiring the parties to resort to the courts of Taiwan.

Thereafter, the defendants requested this court to decide the limitations issue, and plaintiffs had no objection to our doing so.

We agreed to take on the defendants' motion, and the parties have filed additional briefs, supplementing the arguments they made on the *forum non conveniens* motion. We will refer to the January 14, 2009 slip opinion as the "Chang opinion."

One of the issues we had to address in order to decide the *forum non conveniens* motion was whether Taiwan is an "adequate" forum for the litigation of plaintiffs' claims. The plaintiffs argued that it was not adequate because their claims were time-barred in Taiwan. We agreed that if the claims were time-barred there, this would make Taiwan an inadequate forum. Chang at 12.[1] The defendants argued that even if this were true it would not entitle the plaintiffs to litigate their claims in the California district courts, because the limitations law there would be no different. This was because, in defendants' view, the California courts would apply Taiwanese limitations law, and, even if they were to apply California limitations law, that would include California's "borrowing statute" which, again, would result in the claims being time-barred. Plaintiffs, of course, disagreed with these arguments and contended that under the law of California their claims are not time-barred.

We give this background to explain why it was necessary for us, in deciding the *forum non conveniens* motion, to delve into the

---

[1] Or, more precisely, "that the defendants [had] not carried their burden of showing that Taiwan [was] an adequate forum." Id.

limitations law of California. In doing that, however, we did not purport to make any final decision as to whether plaintiffs' claims are in fact time-barred and specifically pointed out that we were only giving our "best judgment as to what might be the outcome concerning limitations" as a part of the necessary *forum non conveniens* analysis. Chang at 19 n.7.

We have approached this new motion of the defendants for summary judgment on limitations grounds with a determination to take a fresh look at the law and not merely rely on the analysis we made in Chang. Plaintiffs have made some new arguments – one in regard to the borrowing statute in particular – and we have fully considered them.

For convenience, we will sometimes adopt relevant portions of the Chang opinion in order to avoid repetition of case citations and quotations from authorities.

## **WHICH LIMITATIONS LAW APPLIES**

The federal courts in California will apply California's "governmental interest test" to determine which limitations law applies to these diversity actions. Orr v. Bank of America, 285 F.3d 764, 772 n.4 (9th Cir. 2002). The governmental interest test was explained in American Bank of Commerce v. Corondoni, 169 Cal. App. 3d 368, 372-73 (Cal. Ct. App. 1985), and the explanation is quoted in Chang at 13. We concluded in Chang that California has a lesser interest in what limitations period applies to plaintiffs'

claims than does Taiwan, so that, under the governmental interest test, the California courts would apply the limitations law of Taiwan to plaintiffs' claims. Chang at 14. The parties have argued this question anew, but we are still persuaded that Taiwan has the greater interest. Accordingly, we now hold that the limitations law of Taiwan applies to plaintiffs' claims. The courts of Taiwan have dismissed substantially identical claims as time-barred in the Peng litigation, Chang at 14-15, and plaintiffs do not argue that their claims are viable in Taiwan. Accordingly, applying Taiwanese limitations law, we hold plaintiffs' tort claims are barred by limitations.

We recognize that there is an argument on the other side of the governmental interest question, and, to cover the possibility that we are wrong in saying Taiwan has the greater interest, we will also address the question of whether plaintiffs' claims would be barred if California limitations law were applied. This leads us to the question of whether there is any material difference between the limitations law of Taiwan and that of California. If the statutory time limits of California were to be applied, the claims are barred. Plaintiffs argue, however, that unlike Taiwan, California has a "discovery" rule that tolls the beginning of the limitations period until such time as the plaintiffs acquire or reasonably should have acquired knowledge of the defendants' wrongdoing and the connection between that wrongdoing and

plaintiffs' injuries.  Plaintiffs argue that due to fraud and concealment by the defendants, they did not learn the necessary information until May 22, 2003, when an article appeared in the <u>New York Times</u>.  (Pls.' Mem. in Opp'n at 17.)  These suits were filed in California in 2004, a year later, and therefore plaintiffs believe they are timely by virtue of the California discovery rule.

The <u>New York Times</u> article stated that the defendant Bayer continued to sell non-heat-treated concentrate in foreign countries, including Taiwan, after it knew that its newly-introduced heat-treated product was safer and unlikely to transmit the HIV virus.  We will assume, for purposes of this discussion of the discovery rule, that plaintiffs did not know of this allegation until it appeared in the <u>New York Times</u> article.  The question is whether plaintiffs' ignorance of Bayer's export of factor concentrate that had been discontinued in the United States for safety reasons, and Bayer's alleged concealment of the different way it treated United States and foreign markets, tolled the statute of limitations until the time the <u>New York Times</u> article appeared.  We hold that it did not.  More than five years prior to the appearance of the article, plaintiffs, through their counsel, had begun negotiations with Bayer and Baxter to settle their negligence claims.  Clearly, the plaintiffs suspected that their infections had been caused by infusion of the defendants' factor concentrates and that the defendants had been guilty of negligence

in the manufacture and marketing of the concentrates. There is no other explanation for the settlement negotiations with the defendants, which continued until the settlement of plaintiffs' claims in 1998, more than five years before they filed suit.

We disagree with plaintiffs that the limitations period was tolled until they knew all of the facts concerning the defendants' alleged wrongdoing. It is not necessary that a plaintiff know all of the details of the defendant's alleged wrongdoing. It is sufficient that he <u>suspects</u> that someone has done something wrong to him. We will quote again from the California Supreme Court opinion in <u>Norgart v. Upjohn Co.</u>, 981 P.2d 79 (Cal. 1999), quoted in <u>Chang</u> at 16:

> [T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof-when, simply put, he at least "suspects ... that someone has done something wrong" to him (<u>Jolly v. Eli Lilly & Co.</u>, supra, 44 Cal.3d at p. 1110), "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding" (id. at p. 1110, fn. 7). He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. (<u>Jolly v. Eli Lilly & Co.</u>, supra, 44 Cal.3d at p. 1110.) He has reason to suspect when he has "'"'notice or information of circumstances to put a reasonable person *on inquiry*' "'" (<u>id.</u> at pp. 1110-1111, italics in original); he need not know the "specific 'facts' necessary to establish" the cause of action; rather, he may seek to learn such facts through the "process contemplated by pretrial discovery"; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place-he "cannot wait for" them "to find" him and "sit on" his "rights"; he "must go find" them himself if he can and "file suit" if he does (<u>id.</u> at p. 1111).

981 P.2d at 88-89 (parallel citations omitted). The California discovery rule is of no benefit to the plaintiffs, and their claims are time-barred in California by the lapse of the limitations period, which began to run at the latest in the late 1990s. They did not file these actions until 2004.

Plaintiffs have another problem with California limitations law, which includes the state's "borrowing statute." The statute reads as follows:

> When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State.

Cal. Civ. Proc. Code § 361. In Chang, we expressed the view that, because plaintiffs' claims are barred in Taiwan, they are necessarily barred in California because of the borrowing statute. Chang at 19. We regarded the word "arisen" in the statute as synonymous with "accrued," and held that both the negligence and fraudulent inducement claims had accrued in Taiwan. Id.

In opposing defendants' present motion for summary judgment, plaintiffs make a new argument in regard to the borrowing statute. They say that their causes of action did not "arise" in Taiwan, and therefore the borrowing statute does not apply. Instead, plaintiffs argue that their claims "arose" in California, because that is where the defendants' wrongful conduct occurred. In their view, "arise" and "accrue" are not synonymous, and the term

"arisen" in the borrowing statute refers simply to a breach of a duty, regardless of whether any injury or damage has resulted. (Pls.' Mem. in Opp'n at 18-22.) In support of their argument, plaintiffs cite the case of McKee v. Dodd, 152 Cal. 637 (1908). This was an action brought by a New York creditor on three promissory notes executed by the decedent Dodd in New York in 1891. The Court noted:

> All of these notes by their terms became due and payable before the expiration of the year 1891. Shortly after their execution Dodd left New York and never returned.

Id. at 638. Dodd lived for a time in California and then moved to Honolulu, where he resided for several years until his death in 1900. He left property in California, and the New York creditor, McKee, brought suit in California against Dodd's executrix for payment on the notes. McKee obtained a judgment, and the executrix appealed on the ground that McKee's claim was barred by the language of the California borrowing statute:

> Appellant contends that the cause of action "arose" simultaneously in New York State at the time the promissory notes became due and payable, and also in Europe where at that moment [sic] deceased chanced to be; that subsequently the cause of action arose successively in every country through which he passed and arose finally in Hawaii upon his arrival there. If this be the true construction of the statute, then admittedly plaintiff's cause of action is barred.

Id. at 640.

The court rejected the defendant's argument as follows:

> It was the right of plaintiff to look for payment of his debt at the time it became due and at the place of

> payment, New York State. It was the duty of the deceased to pay the debt, not only when it became due, but at the place of payment, New York State. His failure in this regard gave rise to the cause of action, and, clearly therefore, that cause of action arose in the state of New York.

Id. at 641. In short, the defendant Dodd had a duty to pay the notes in New York in 1891. "<u>His failure in this regard</u> gave rise to the cause of action ...." (emphasis added). Defendant's failure to pay was at once the breach of duty and the damage to plaintiff that gave rise to the cause of action.

Plaintiffs read other language in the <u>McKee</u> case to mean that under California law a cause of action can "arise" within the meaning of the borrowing statute before there is any injury or damage to the plaintiff. The language they rely just precedes the above-quoted passage:

> A cause of action, as Professor Pomeroy points out with his usual lucidity, arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests.

Id. (citation omitted). (Pls.' Mem. in Opp'n at 19.) When read in the context of the facts and the other language of the opinion, this language relied on by the plaintiffs cannot reasonably be taken as a holding by the California Supreme Court that there can be a cause of action without injury or damage. The facts were that McKee's injury occurred when the notes came due and Dodd failed to pay. The crux of the court's holding was that this was the moment at which the cause of action arose. It happens that in a

promissory note case, unlike a tort case, the breach of the duty and the resulting damage are one and the same: the debtor's failure to pay is the damage sustained by the creditor.

Although McKee is the principal basis of the plaintiffs' argument that the California borrowing statute does not apply, the defendants make no reference to the case in their reply memorandum. This is a remarkable omission, but we are able to conclude without help from the defendants that McKee does not stand for the proposition that a tort action can "arise" – either in California or Taiwan – without injury or damage to the plaintiff.

We still believe that "arise" in the borrowing statute is synonymous with "accrue." There can be no accrual without injury or damage. California law could not be clearer on this point. See Chang at 17-19.[2]

Plaintiffs argue that the drafters of the borrowing statute must have had in mind some difference between "arise" and "accrue" because the statute uses both terms. We acknowledge that this is the normal rule of statutory construction, but we think it does not govern here. If the drafters thought the terms were synonymous, as

---

[2] The other case plaintiffs rely on for their theory that an action can "arise" without injury is Dalkilic v. Titan Corp., 516 F. Supp. 2d 1177 (S.D. Cal. 2007). The facts of that case are complicated, and we are not altogether sure we understand the holding of the court. If it is that a cause of action can "arise" in California before there is any injury, our understanding of California law is to the contrary.

we believe they did, there would be no inconsistency in using them both.[3]

*   *   *   *

As we hope is clear, we regard McKee as entirely consistent with the rule that for there to be a cause of action for tort in California there must be damage.[4] McKee was not a tort case, let alone a products liability case where there can be a significant time lag between manufacture of the defective product and injury to a person who uses the product. There was no dispute in McKee that the cause of action arose in New York when the notes were not paid by Dodd. The issue in the case was whether, having arisen in New York, the cause could thereafter also "arise" repeatedly in other jurisdictions, where it could become time-barred. The Court said no; it arose once and only once. And that was the end of the defendant's limitations argument, because (apparently) Dodd's absence from the state tolled limitations until McKee filed suit against the executrix in California.[5] The McKee Court had no

---

[3]/ The drafters would not be the only ones to have treated the terms as synonymous. The second definition of "accrue" in Webster's Third New International Dictionary is "to come by way of increase or addition: arise as a growth or result...." Webster's Third New International Dictionary 13 (1971). Black's Law Dictionary defines "accrue" as "To come into existence as an enforceable claim or right; to arise." Black's Law Dictionary 22 (8th ed. 2004). The contextual illustration states: "[T]he plaintiff's cause of action for silicosis did not accrue until the plaintiff knew or had reason to know of the disease."

[4]/ If the case could somehow be regarded as holding otherwise, it has effectively been overruled by the subsequent California cases.

[5]/ The opinion does not specifically say why McKee's claim was not time-barred in New York, but the fact that the Court cited the Illinois case of Story v. Thompson, 36 Ill. App. 370 (1889), involving an Illinois limitations statute

occasion to discuss the question of whether any cause of action of any kind can "arise" before damage has been sustained.[6]

Plaintiffs' confusion is illustrated by one of the captions in their memorandum:

> Since the defendants' wrongful and fraudulent conduct arose in California, California's borrowing statute is not triggered.

(Pls.' Mem. in Opp'n at 17.)  But the borrowing statute does not refer to "wrongful and fraudulent conduct" arising; rather, it speaks of a "cause of action" arising.  Plaintiffs have offered no authority for their argument that their <u>causes of action</u> for tort arose in California rather than in Taiwan, where the damages occurred.

We hold that the plaintiffs' causes of action for negligence arose in Taiwan because that is where their injuries occurred. Similarly, their causes of action for fraudulent inducement arose in Taiwan because that is where defendants' alleged misrepresentations were made.  The California borrowing statute applies, and that makes Taiwan limitations law applicable to the case.  Therefore, the California discovery rule has no application.

---

providing for tolling when the defendant is absent from the state, seems to indicate that the New York statute had the same kind of provision.

[6]/ The only possible instance that occurs to us is a suit for injunctive relief to prevent threatened harm.

## CONCLUSION

For the foregoing reasons, we conclude that all of plaintiffs' tort claims are time-barred both in Taiwan and in California. There are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law. Accordingly, judgment will be entered in favor of the defendants Bayer Corporation and Baxter Healthcare Corporation and against the Taiwanese plaintiffs, dismissing these causes with prejudice. The parties are requested to confer and submit a proposed judgment order within 14 days.[7]

DATED: March 26, 2009

ENTER: _____
United States District Judge

---

[7] The defendant Baxter Healthcare Corporation has made a separate motion for summary judgment based on the absence of evidence that its factor concentrates were used by any of the Taiwanese plaintiffs. In a separate order entered this date, we have granted Baxter's motion as to thirty-three of the thirty-six Taiwanese plaintiffs and denied it as to the remaining three plaintiffs. Entering two judgments in favor of Baxter on the same date could create a problem: the first of the judgments to be docketed would eliminate the action of the thirty-three plaintiffs against Baxter, so that the docketing of the second judgment would have no action to operate upon. To head off this problem, we will enter just one judgment in favor of both defendants, and the judgment will note that as to the thirty-three plaintiffs there is this additional ground for the judgment in favor of Baxter.